IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PORTUS SINGAPORE PTE LTD, and PORTUS PTY LTD., | ) ) ) |
| Plaintiffs, | ) ) ) C.A. No. 19-480-LPS-JLH |
| v. | ) ) |
| SIMPLISAFE, INC., | ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiffs Portus Singapore Pte Ltd. and Portus Pty Ltd. (collectively, "Plaintiffs") filed this patent infringement suit against Defendant SimpliSafe, Inc. ("SimpliSafe"), alleging infringement of U.S. Patent Nos. 8,914,526 ("'526 patent") and 9,961,097 ("'097 patent"). After SimpliSafe moved to dismiss the original complaint, Plaintiffs amended their complaint. (D.I. 11 ("Amended Complaint").)[1] Pending before the Court is SimpliSafe's motion to dismiss Plaintiffs' Amended Complaint. (D.I. 13.)

For the reasons stated below, I recommend that SimpliSafe's motion be GRANTED-IN-PART (with respect to Plaintiffs' counts of direct infringement) and DENIED-IN-PART (with respect to Plaintiffs' counts of indirect and willful infringement).

## I. BACKGROUND

The '526 patent is entitled "Local and Remote Monitoring Using a Standard Web Browser." It was issued on December 16, 2014 and claims priority to International App. No. PCT/AU99/01128, filed on December 17, 1999, which, in turn, claims priority to Australian Patent App. No. PP 7764, filed on December 17, 1998. The '097 patent is entitled "System for Remote

---

[1] I recommend DENYING SimpliSafe's original motion to dismiss (D.I. 8) as moot.

Access of a User Premises." It was issued on May 1, 2018, and it resulted from a continuation application. Portus Singapore Pte Ltd. is the assignee of both patents. Portus Pty Ltd. is the exclusive licensee of both patents. (Amended Complaint, ¶¶ 10, 16.)

The '526 and '097 patents have the same specification.[2] It describes a security system that permits a user to monitor her home (or other location) remotely over the Internet. ('526 patent, Abstract.) Plaintiffs allege infringement of claims 1, 3, 4, 5, 12, 22, 25, 44, 45, 46, 49, 50, and 59 of the '526 patent. (Amended Complaint, ¶¶ 19, 57.) Claims 1 and 59 are independent claims and the rest depend on claim 1. Plaintiffs allege infringement of claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 22 of the '097 patent. (*Id.*, ¶¶ 35, 57.) Claims 1 and 19 are independent claims and the rest are dependent.

The basic components of the asserted claims are: (1) a remote access device that can connect to the Internet; (2) at least one "connection gateway" in the user's premises; and (3) a server located outside the user's premises that can "interconnect on-demand" with the connection gateways.[3] (*See* '526 patent, cls. 1, 59; *see also id.*, Abstract; '097 patent, cls. 1, 19.) Claim 1 of the '526 patent recites:

> A system for remote access of home networks in respective user premises comprising:
>
> an Internet browser hardware device including a processor running an Internet browser;
>
> an extranet located external to said user premises and accessible via said Internet browser;
>
> a plurality of connection gateways each comprising a hardware processor, each

---

[2] In this section, I attempt to describe the invention in a way that facilitates ease of understanding. In so doing, I make some generalizations about the invention. Nothing set forth herein should be taken as the Court's views on any future claim construction (or other) issues. For the sake of simplicity, I cite to the '526 patent specification.

[3] The parties do not appear to dispute that, for the purpose of resolving this motion, the claimed systems are not materially different. (D.I. 14 at 3 n.2.)

of at least a subset of which is located in a respective one of the user premises and is part of the respective home network of the respective user premises; and

at least one communications server that each comprises a hardware processor located in said extranet and adapted to interconnect on-demand with said connection gateways;

wherein:

each of the at least the subset of the plurality of connection gateways is accessible by the at least one communications server and is communicatively coupled to one or more networked components of the respective home network in which the respective connection gateway is located, the at least one communications server not being communicatively coupleable to the one or more networked components of the respective home network; and

responsive to user-input of a Uniform Resource Locator (URL) in accordance with which said Internet browser accesses a predetermined address on said extranet to which address the URL corresponds, in which accessing said Internet browser provides authorization data, one of said at least one communications server subsequently:

determines which one of said home networks in which one of said connection gateways is located said authorization data indicates authority to at least one of control and monitor; and

creates a new communications session between said communications server and said one of said connection gateways located in said determined one of said home networks to at least one of control and monitor operation of at least one service in said home network, by which communications session the extranet:

obtains information contained within the home network from the connection gateway of the determined home network; and

serves a webpage to the Internet browser via which the information from the connection gateway of the determined home network is provided to said Internet browser.

('526 patent, cl. 1.)

Claim 1 of the '097 patent recites:

A system for remote access of a user premises comprising:

3

a first hardware processing circuitry running an access browser module;

a second hardware processing circuitry located in a first network; and

a connection gateway that is located in, and is part of a local network of, the user premises;

wherein:

> the second hardware processing circuitry is external to the user premises, is accessible via the access browser module, and is configured to communicate on-demand with the connection gateway;
>
> the connection gateway is integrated with or communicatively coupled to one or more networked components of the local network of the user premises; and
>
> the system is configured such that user-input of a Uniform Resource Locator (URL), in accordance with which the first hardware processing circuitry, using the access browser module, accesses an address on the first network, begins a sequence in which the second hardware processing circuitry responsively serves to the first hardware processing circuitry, via the access browser module, information regarding at least one of the one or more networked components of the local network, which information the second hardware processing circuitry obtains from the connection gateway without a direct communicative coupling between the second hardware processing circuitry and the at least one networked component of the local network,
>
> wherein the sequence includes the first hardware processing circuitry transmitting to the second hardware processing circuitry authentication data indicating authority to access the at least one networked component of the local network, the transmission of the authentication data being required for the serving of the information to the first hardware processing circuitry, and wherein:
>
> the user premises is one of a plurality of user premises;
>
> the connection gateway is one of a plurality of connection gateways, each of which is located in, and is part of a respective local network of, a respective one of the plurality of user premises, and to each of which the second hardware processing circuitry is configured to connect; and
>
> the sequence further including the second hardware processing circuitry determining which one of the local networks the authentication data indicates authority to access,

> the sequence further including the second hardware processing circuitry establishing a new communication session between the first hardware processing circuitry and the connection gateway of the respective local network that the authentication data indicates authority to access upon verification of the authentication data, and
>
> wherein the second hardware processing circuitry receives, via the connection gateway, selected information from at least one of the networked components of the local network of the user premises, and stores the selected information in the first network for subsequent review by a user associated with the user premises, without requiring the user to provide the authentication data, and
>
> wherein the authority to access the at least one networked component of the local network by transmitting the authentication data also provides authority to access and review the previously stored selected information in the first network via the access browser module.

('097 patent, cl. 1.) The parties' arguments on this motion to dismiss are not specific to the individual asserted claims. In general, the asserted claims list the physical components of the claimed system (*i.e.*, the remote access device, the server located outside the user's premises, and the connection gateway in the user's premises) and describe how they function.

The Amended Complaint alleges that SimpliSafe sells infringing home security systems. (Amended Complaint, ¶ 12.) According to the Amended Complaint, the accused home security systems use "Base Stations" that reside in the user's premises. (*Id.*, ¶¶ 20, 36; *see also id.*, Ex. A-1, Figs. 1, 15-17; *id.*, Ex. B-1, Figs. 1, 15-17.) The base stations connect to one or more components in the user's premises, such as window or door sensors. (*Id.*) The base stations can also connect to a server located outside of the user's premises. (*Id.*) A user who is not at home can obtain information about her premises remotely using a smartphone, tablet, or computer with an Internet browser. (*Id.*) When the user enters the URL for the server into the Internet browser, the server accesses the base station in the user's premises and obtains information. (*Id.*) That information is sent back to the user's smartphone, tablet, or computer, and is displayed in the Internet browser. (*Id.*)

The Amended Complaint contains four counts. Count One alleges direct infringement of the '526 patent by SimpliSafe. Count Two alleges direct infringement of the '097 patent by SimpliSafe. Count Three alleges that SimpliSafe induced its customers to infringe both patents. Count Four alleges willful infringement of both patents by SimpliSafe.

## II. LEGAL STANDARDS

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not. *Id.* at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

## III. DISCUSSION

### A. Direct Infringement

SimpliSafe argues that Counts One and Two should be dismissed because the Amended

Complaint fails to plausibly allege that SimpliSafe directly infringes the asserted claims. I agree.

Section 271(a) of Title 35 pertains to direct infringement. It provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patent invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). A complaint sufficiently pleads direct infringement when it puts the defendant "on notice of what activity . . . is being accused of infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)); *see also BioMérieux, S.A. v. Hologic, Inc.*, C.A. No. 18-21-LPS, 2018 WL 4603267, at *3 (D. Del. Sept. 25, 2018). There is no requirement that the plaintiff "plead facts establishing that each element of an asserted claim is met." *Nalco*, 883 F.3d at 1350 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012)).

"[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) (citing *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005), *abrogated on other grounds by IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1361 n.1 (Fed. Cir. 2014)). Additionally, "direct infringement by use of a system claim requires a party to use each and every element of a claimed system." *Id.* (internal marks omitted). Accordingly, "to use a system, a person must control (even if indirectly) and benefit from each claimed component." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017). The benefit cannot be general, amounting to merely the "benefits from the claimed system as a whole." *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 947 (Fed. Cir. 2018). Instead, "[t]he alleged benefit should be tangible, not

speculative, and tethered to the claims." *Id.*

Counts One and Two of the Amended Complaint allege that the "use" of SimpliSafe's home security systems directly infringes the '526 and '097 patents. (Amended Complaint, ¶¶ 20-32, 36-54.) SimpliSafe contends that those counts should be dismissed because they do not plausibly allege that SimpliSafe itself "uses" the claimed systems.[4] According to SimpliSafe, the Amended Complaint only alleges that "it is the end user—not SimpliSafe—who supplies and uses the required smartphone, tablet, or computer."

I agree with SimpliSafe. Plaintiffs do not dispute that all of the asserted system claims require some type of remote access device that can connect to the Internet. (*See, e.g.*, '526 patent, cl. 1 ("Internet browser hardware device" that is "responsive to user-input of a Uniform Resource Locator (URL)"); *id.*, cl. 59 ("a mobile device . . . that provides a user interface" and is "responsive to user-input, using the user interface, of a Uniform Resource Locator (URL)"); '097 patent, cl. 1 ("a first hardware processing circuitry running an access browser module" where "the system is configured such that user-input of a Uniform Resource Locator (URL), . . . using the access browser module, accesses an address on the first network, begins a sequence . . . ."); *id.*, cl. 19 ("a first hardware processing circuitry including a user interface" where "the system is configured such that user-input of a Uniform Resource Locator (URL) using the user interface . . . begins a sequence . . . .").)

The well-pled factual allegations in the Amended Complaint only describe one "user" of such a remote device: SimpliSafe's customer. The Amended Complaint alleges that SimpliSafe's accused security systems permit remote access with "a smartphone, tablet, or computer" ('526 patent, cl. 1; '097 patent, cls. 1, 19) or "a mobile device (such as an android and iOS smartphone)"

---

[4] Plaintiffs' brief does not dispute that SimpliSafe does not make, sell, or offer to sell systems that meet each element of the asserted claims. (*Compare* D.I. 14 at 5 n.3 *with* D.I. 15 at 5-8.)

8

('526 patent, cl. 59). (Amended Complaint, ¶¶ 20, 32.) The Amended Complaint includes a number of screenshots as "factual support" for the remote device component: the SimpliSafe "customer" log-in page; a screenshot of a SimpliSafe user interface "Dashboard"; a SimpliSafe advertisement depicting the SimpliSafe smartphone application and described functionality; and the Apple App Store entry for the SimpliSafe Home Security Systems Mobile Control iPhone and iPad app. (*Id.*, ¶¶ 20, 32, 36; *id.*, Ex. A-1, Figs. 3, 8, 15, 17; *id.*, Ex. B-1, Figs. 3, 8, 15, 17.) All of these factual allegations relate to a SimpliSafe's customer's ability to use a remote device to access the Internet and monitor her premises. In contrast, there are no facts alleged supporting the contention that SimpliSafe itself uses the claimed remote access device in connection with operation of the claimed systems. Nor are there any facts suggesting that SimpliSafe controls a user's remote device or puts such a device into service. *Centillion*, 631 F.3d at 1284; *Intellectual Ventures I*, 870 F.3d at 1329. Since SimpliSafe does not use or put such a device into service, it does not "use" the claimed systems within the meaning of 35 U.S.C. § 271(a). *Centillion*, 631 F.3d at 1286.

Plaintiffs' sole argument in response (which Plaintiffs state in three different ways in three different subsections of its brief) is that the Amended Complaint generally alleges that SimpliSafe uses the accused systems. (D.I. 15 at 6 ("It says quite clearly that '[t]he use of the Accused Instrumentalities <u>by Defendant</u>, its resellers, or end-user customers, directly infringes claim 1 of the '526 patent' and that the [sic] 'a smart phone, table [sic], or computer with an internet browser is <u>used by Defendant</u>, its resellers, or end users.'" (emphases in original)); *id.* at 7 ("Defendant's argument attempts to overlook the allegations in the Amended Complaint that Defendant uses the Accused Instrumentality."); *id.* ("Furthermore, the Amended Complaint alleges that Defendant uses the Accused Instrumentalities, therefore 'put[ing] [sic] the invention into service.'").)

9

Plaintiffs' argument misses the mark. The essence of their argument is that they intended to state a direct infringement claim against SimpliSafe. To do that, however, Plaintiffs must plausibly allege—using well-pleaded facts—that SimpliSafe uses the claimed systems because it puts the claimed systems as a whole into service, including the remote access device component. Plaintiffs' conclusory allegations that SimpliSafe uses the accused instrumentalities are insufficient to state a claim that SimpliSafe uses the invention as claimed. *See, e.g., Grecia*, 724 F. App'x at 946-47 (affirming dismissal of direct infringement claim based on "use" of a system where the complaint failed to explain how the defendant put each claimed component into service). Likewise, Plaintiffs' conclusory statement, with no factual support, that "Defendant [and] its resellers" use a remote access device is insufficient—especially since the Amended Complaint lacks any facts suggesting that Defendant uses such a device in connection with of the rest of the claimed elements.[5] *See id.* (plaintiff's conclusory assertions were "insufficient to state a plausible claim for relief for an infringing use of a claimed system under § 271(a)"). Accordingly, I agree with SimpliSafe that the Amended Complaint fails to plausibly allege that SimpliSafe directly infringes the patents.

## B. Induced Infringement

Next, SimpliSafe argues that Count Three should be dismissed because it fails to plausibly allege induced infringement. I disagree.

Section 271(b) of Title 35 provides a cause of action for induced infringement. It provides

---

[5] I also reject Plaintiffs' apparent suggestion that SimpliSafe directly infringes because it derives a benefit from operation of the accused home security systems. A general benefit not tethered to the claim language is insufficient to state a direct infringement claim based on use. *See Intellectual Ventures I*, 870 F.3d at 1329 ("[T]o use a system, a person must control (even if indirectly) and benefit from each claimed component."); *Grecia*, 724 Fed. App'x at 947 (affirming dismissal because "complaint fail[ed] to plausibly allege that [the defendant] obtained a benefit from each and every claim element").

that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To state a claim of induced infringement that can survive a motion to dismiss, the complaint must plead (1) an underlying act of direct infringement, (2) facts plausibly supporting an inference that the defendant intended another to take the acts that are alleged to constitute infringement, and (3) facts plausibly supporting an inference that the defendant knew that the induced acts constituted infringement. *Nalco*, 883 F.3d at 1355-56; *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, C.A. No. 18-98, 2019 WL 3069773, at *2 (D. Del. July 12, 2019).

SimpliSafe argues that the Amended Complaint fails to state an induced infringement claim because it (1) does not plausibly allege an underlying act of direct infringement by a SimpliSafe customer and (2) does not allege facts plausibly supporting an inference that SimpliSafe intended its customers to take the acts that are alleged to constitute direct infringement.

### 1. Underlying act of direct infringement

The Amended Complaint sufficiently alleges direct infringement by SimpliSafe's customers. The Amended Complaint names SimpliSafe's home security system as the accused instrumentality and it alleges that SimpliSafe's "end-use customers" use the accused system. (Amended Complaint, ¶ 57.) The Amended Complaint also identifies each feature within the accused home security system that is alleged to meet each limitation of the asserted claims. Each paragraph concludes with citations to figures pertaining to the accused home security system, including what appear to be screenshots of advertisements, user interfaces, contract terms, and an Apple App Store entry for a SimpliSafe Home Security iPhone and iPad app. While screenshots on their own may fail to plausibly allege infringement in certain cases, *see, e.g., Chapterhouse, LLC v. Shopify, Inc.*, C.A. No. 18-300, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018), this case involves more than screenshots and bare conclusory statements. Here, the screenshots

supplement the factual allegations set forth in the text of the Amended Complaint. Under these circumstances, SimpliSafe is "on notice of what activity ... is being accused of infringement." *Nalco*, 883 F.3d at 1350.

The Amended Complaint also plausibly alleges that a single entity—SimpliSafe's customer—uses each element of the asserted claims. The functioning of the system, as described in claim 1 of the '526 patent, can be generally summarized as follows: the end user inputs a URL into the remote access device; the user input causes the server to start a new communications session with the connection gateway in the user's premises; the server obtains information pertaining to the user's premises; and the information is delivered to the user's remote access device as a webpage. ('526 patent, cl. 1.)

In contrast to the direct infringement allegations against SimpliSafe, the Amended Complaint sufficiently alleges that the end-user customers "use"—as well as control and benefit from—the remote access device and the rest of the claimed system. For example, in support of infringement of claim 1 of the '526 patent, Plaintiffs allege the following facts: that "a [user] enters the URL of the server [into the Internet browser], [then] it accesses the server's IP address corresponding to the URL"; "when a user logs in using the username and password, the it [sic] determines which Base Station device to access" and "the server connects to the Base Station"; the external server "obtains information from the networked devices such as window and door sensors and video cameras"; and "the server sends a webpage to the user's web browser which contains information from the Base Station." (Amended Complaint, ¶ 20.)

It does not matter that a customer may not physically possess one or more components of the claimed invention. In *Centillion*, the Federal Circuit concluded that end-user customers could directly infringe claimed systems even though they had no physical possession of certain back-end

processing equipment. *Centillion*, 631 F.3d at 1281. In that case, the customers controlled and benefitted from the back-end processing equipment—and the system as a whole—by initiating requests that caused the back-end processing equipment to generate reports and return them to the customer. Likewise, here, the Amended Complaint sufficiently alleges that a SimpliSafe customer controls the system—even those components not in her own physical possession—"[b]y causing the system as a whole to perform [its processing function] and obtaining the benefit of the result[.]"[6,7] *Id.* at 1285.

### 2. Specific intent to encourage infringement

SimpliSafe also argues that the induced infringement claims should be dismissed in their entirety because the Amended Complaint fails to allege facts plausibly supporting an inference that it intended its customers to take the acts alleged to constitute infringement. I disagree.

SimpliSafe cites *M2M Solutions LLC v. Telit Communications PLC*, C.A. No. 14-1103, 2015 WL 4640400 (D. Del. Aug. 5, 2015), in support of its argument, but that case actually supports Plaintiffs. There, the Court concluded that a complaint sufficiently alleged specific intent to induce customers to take infringing acts where it stated that "[the defendant] has actively induced direct infringement by, *inter alia*, ... publishing manuals and promotional literature describing and instructing the configuration and operation of those products in an infringing manner by its customers, and by offering support and technical assistance to its customers that encourage use of those products in ways that directly infringe one or more claims of the [patent in

---

[6] SimpliSafe's motion to dismiss does not argue that the claimed system requires multiple user customers to put it into service, so I do not analyze that issue here.

[7] The Amended Complaint also contains a conclusory allegation that SimpliSafe's "resellers" directly infringe the asserted patents. (Amended Complaint, ¶ 57.) But the Amended Complaint contains no facts supporting that allegation. Moreover, Plaintiffs' opposition to the motion to dismiss only argues that SimpliSafe induced its customers to directly infringe. (D.I. 15 at 11.) Because I conclude that Count Four sufficiently states a claim that SimpliSafe induced its customers to infringe, I do not separately analyze direct infringement by resellers.

13

suit]." *Id.* at *4.

The allegations of specific intent in this case are even stronger because the Amended Complaint incorporates specific examples of SimpliSafe's instructions to its customers. Plaintiffs attached screenshots to the Amended Complaint that suggest that SimpliSafe instructs its customers (1) to put a SimpliSafe Base Station (which Plaintiffs allege meets the connection gateway component of the claimed invention) in their premises (Amended Complaint, Ex. A-1, Fig. 1) and (2) to use a computer or mobile device to remotely check the status of their premises (which Plaintiffs allege meets the remote access device component of the claimed invention) (*id.*, Figs. 3, 15). As explained above, the third main component of the claimed system (the server external to the user premises) is not alleged to be in the physical possession of the customer but the Amended Complaint sufficiently alleges that a customer puts that component into service when she logs into the remote access component (*id.*, ¶ 20; *see also id.*, Ex. A-1, Fig. 15). In short, the Amended Complaint adequately alleges that SimpliSafe instructs its customers to take specific acts that put the entire claimed system into service.

The cases cited by SimpliSafe are distinguishable. For example, in *MONEC Holding AG v. Motorola Mobility, Inc.*, the plaintiff's specific intent allegations were insufficient because the "conclusory averments" about defendant's marketing activities "contain[ed] no factual support." 897 F. Supp. 2d 225, 234 (D. Del. 2012). The same was true in *Pragmatus AV, LLC v. TangoMe, Inc.*, No. 11-1092, 2013 WL 571798, at *12 (D. Del. Feb. 13, 2013), and *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. 13-2052, 2014 WL 4675316, at *6 (D. Del. Sept. 19, 2014). And, in *Vita-Mix Corp. v. Basic Holding, Inc.*, the Federal Circuit affirmed summary judgment of no inducement because the plaintiff provided no evidence showing that the defendant encouraged its customers to use the product in an infringing way. 581 F.3d 1317, 1328 (Fed. Cir. 2009). Here,

in contrast, Plaintiffs provide examples of SimpliSafe's directions to its customers to take specific actions that would allegedly put the claimed invention into service. (Amended Complaint, ¶ 20; *id.*, Ex. A-1, Figs. 1, 3, 15.)

In its motion to dismiss, SimpliSafe makes no distinction between pre-suit and post-suit inducement. It argues that Plaintiffs' inducement claim should be dismissed in its entirety. I disagree, since the allegations are at least sufficient to state a claim of post-suit inducement. Accordingly, I recommend denying SimpliSafe's motion to dismiss Plaintiffs' induced infringement claim.[8]

### C. Willful Infringement

Finally, SimpliSafe invites the Court to dismiss the willful infringement claim set forth in Count Four. I recommend declining the invitation.

To state a claim for willful infringement, "a plaintiff need (only) plausibly allege that 'the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.'" *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 449 (D. Del.

---

[8] As explained above, a plaintiff alleging induced infringement must show not only that the defendant intended another to take certain acts, but also that the defendant knew that those acts constituted infringement. In its brief, SimpliSafe contends that Plaintiffs' "allegations fail to give rise to a plausible inference that SimpliSafe specifically intended to encourage third parties' infringement," which might be read as a challenge to both requirements. But the focus of SimpliSafe's argument is that the allegations are insufficient to show that it intended its customers to take the acts alleged to be infringing. (D.I. 14 at 9-13; D.I. 16 at 6-7.) I reject that argument for the reasons set forth above.

Even if SimpliSafe did challenge the knowledge requirement, I would reject it. "[T]here is no requirement that plaintiff's induced infringement claim be limited to presuit knowledge and facts." *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 393 (D. Del. 2013). As explained above, the Amended Complaint plausibly alleges that SimpliSafe's customers are continuing to infringe and that SimpliSafe continues to induce them to take the infringing acts. The requirement that SimpliSafe know that their customers' acts constitute infringement is satisfied (at a minimum) by its notice of the Amended Complaint. *Id.*; *see also DoDots*, 2019 WL 3069773, at *3; *ReefEdge Network, LLC v. Juniper Network, Inc.*, 29 F. Supp. 3d 455, 460 (D. Del. 2014).

2018) (quoting *Välinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082, 2018 WL 2411218, at *13 (D. Del. May 29, 2018)).

Count Four alleges that Defendant has willfully infringed by "making, using, selling, and offering for sale the Accused Instrumentalities, and in inducing its customers to use the Accused Instrumentalities in a manner that infringes the claims of the '526 and '097 patents." (Amended Complaint, ¶ 66.) SimpliSafe's sole argument in support of dismissal of the willful infringement claim is that the Amended Complaint fails allege "a plausible direct infringement claim." (D.I. 14 at 13.) It is unclear to me what SimpliSafe means by a "direct infringement claim." If SimpliSafe means that a defendant cannot willfully infringe unless it is a direct (as opposed to an indirect) infringer, SimpliSafe has provided no support for that contention and it appears to be wrong. *Cf. Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1369-70 (Fed. Cir. 2006) (affirming judgment of willful infringement based in part on induced infringement).

If instead SimpliSafe means that there can be no willful infringement without an act of direct infringement, I agree. However, as set forth above, I think the Amended Complaint adequately alleges direct infringement by SimpliSafe's customers, and I agree with Plaintiffs that they have sufficiently alleged induced infringement.

SimpliSafe has set forth no other basis to dismiss the willful infringement claim. Accordingly, I do not recommend dismissal.

## IV. CONCLUSION

For the reasons set forth above, I recommend that SimpliSafe's motion to dismiss the Amended Complaint (D.I. 13) be GRANTED-IN-PART (with respect to Plaintiffs' counts of direct infringement) and DENIED-IN-PART (with respect to Plaintiffs' counts of indirect and willful infringement). I also recommend that SimpliSafe's original motion to dismiss (D.I. 8) be

denied as moot.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: November 15, 2019

Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE